[*Special Term*, 1871.]

WASEM, A TAX-PAYER OF CINCINNATI, FOR HIMSELF AND OTHERS, *v.* THE CITY OF CINCINNATI, THE TREASURER, AND AUDITOR.

Section 100 of the municipal code, which requires the publication of ordinances in some newspaper of general circulation, does not preclude the publication of ordinances by other means, in the discretion of the city council, and the court will not by injunction restrain that discretion, even though the ordinances should be published in newspapers which have not a general circulation in the city; provided, they are also published in some newspaper which has such general circulation.

STORER, J. Plaintiff says he is a tax-payer and interested in the proper expenditure of the public moneys; that by section 100 of the municipal corporation act, it is provided that all ordinances shall be published in some newspaper

of general circulation in the corporation; if a daily, six times, and if a weekly, twice before going into operation.

The plaintiff alleges that the city has published the city ordinances in the Cincinnati *Daily Times*, and the Daily Cincinnati *Courier*, a newspaper published in the German language and not of general circulation in said city—two newspapers of said city, "squandering the funds of the city."

That the *Courier* has no general circulation, and is published only in the German language, and the publication of the ordinances in said paper is useless; that taxes are high already; that when the bid was made for such publication by the *Courier*, it had not been published at all, and that after being in existence for four months, its circulation does not exceed a thousand daily copies; that the city solicitor declined to apply for an injunction; that if the city is not restrained in this matter, the plaintiff will sustain irreparable injury thereby.

The prayer is to restrain the city from the publication of ordinances in the *Courier*, and from paying for the publications already made in that paper.

The question now is, whether section 100 of the municipal code, which provides that "all ordinances shall be published in some newspaper of general circulation in the corporation," is to be taken as a restriction upon the power of the city to publish in more than one newspaper, or to add publicity in some other way.

Section 562 of the same code is cited as showing that the act is to be construed as fixing the maximum of publication. The last-named section provides that advertisements for bills for improvements shall be advertised in some newspaper of general circulation in said corporation, and in two, if there are so many.

By section 8 of the same code, very general and comprehensive powers are given to municipal corporations, "embracing authority to contract and be contracted with, to acquire, hold, and possess property, real and personal," etc.

This general grant of power is express, and operates to confer authority to make contracts in regard to matters properly pertaining to the carrying on of the municipal government, except so far as that authority is limited by other provisions of the municipal code.

If, then, there were no provisions whatever as to the publication of the ordinances of the city, I know of no restriction in the statute by which it would be unlawful for the city government to cause such publications to be made in such manner as the city council should deem to be expedient.

Does, then, the language of section 100 of the municipal code expressly or impliedly limit the power of the city council in that particular? It requires that the ordinances shall be published in some newspaper of general circulation in the corporation. But it does not expressly, nor impliedly, say that that is all the publication that shall be permitted or procured. Nor is there any such limitation of power expressed or implied in section 562 of the municipal code. That section requires the publication of the notice of all improvements to be contracted for in some newspaper of general circulation, and in two if there are so many in the corporation. There is no language of restriction in either section. The council have as much power to publish as it would have had under the general powers in section 8, if there had been no provisions like that in section 100. It may give such additional publicity to an ordinance as it may deem expedient, and it may employ other means than newspapers in general circulation, if in its discretion such other means are deemed useful. It may publish in a newspaper which is printed in the German language; but the publication must be made in at least one paper of general circulation in the corporation.

It is not denied in the petition that the Cincinnati *Daily Times* is a newspaper in general circulation. It is denied, however, that the *Courier* is such a newspaper. In the view which I take of this provision of the statute, the

*Times* being admitted to be a newspaper in general circulation, the publication in that paper complies with the requisition of the statute, and it is not material that the *Courier* should be a paper in general circulation; and the allegation that it is not, is not a ground for the interference of the court with the discretion exercised by the city council in this particular. The general allegation that such publication is useless and a waste of money, being in relation to a matter entirely within the discretion of the city council, and not in violation of any law, does not change the rule we adopt at all. If the council should proceed to make a contract for an improvement without publishing the required notice, the court might interefere, as there would be a violation of law, and the act would be *ultra vires*.

But I do not see that the petition makes a case for an injunction.

The motion for an injunction must be overruled.